# SIN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RANDALL LOUIS ZACHRY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. CIV-18-72-RAW-SPS |
| | ) |
| **COMMISSIONER of the Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Randall Louis Zachry requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 27). He completed high school and has worked as a truck driver and forklift driver (Tr. 21, 181). The claimant alleges inability to work since his application date of February 11, 2015, due to a number of impairments including an aneurysm behind his heart, high blood pressure, sleep apnea, possible hernias, gout, reconstructed acl, depression, and anxiety (Tr. 180).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 11, 2015. His application was denied. Following an administrative hearing, ALJ Kevin Batik found that the claimant was not disabled in a written opinion dated March 21, 2017 (Tr. 15-23). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1581.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform sedentary work as defined in 20 C.F.R. § 416.967(a), but that he could understand, remember, and carry out only simple tasks and instructions (Tr. 19). The ALJ concluded that even though the claimant could not return to his past

relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, callout operator, patcher, or table worker (Tr. 21-22).

## Review

The claimant contends that the ALJ erred by failing to discuss evidence contrary to his findings, specifically evidence related to his cardiac impairments, ACL repair, and subjective statements made by the claimant and his father. None of these contentions are ultimately persuasive, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant had the severe impairments of hypertensive vascular disease, hypertension, gout, and obesity (Tr. 17). The medical evidence in the record reflects that the claimant was hospitalized in April 2014 with an acute onset of back pain and uncontrolled hypertension and discharged four days later with a diagnosis of stable retroperitoneal hematoma, which had been diagnosed with a CT of the abdomen and pelvis (Tr. 237-242, 252). Although the claimant underwent cardiovascular testing, angiograms and echocardiograms were normal at that time (Tr. 253-261, 348-350). The discharge instructions stated that the claimant was to avoid heavy weight lifting, moving large furniture, and trauma to the back, and that he was to consume a heart healthy diet (Tr. 238). In September 2014, the claimant underwent a disability determination through the state of Oklahoma, with Dr. William Cooper, D.O. Dr. Cooper noted that the claimant's blood pressure was 162/110, and that the claimant had pain with range of motion testing of both knees and fingers in both hands (Tr. 283). He assessed the claimant with cardiac aneurysm, uncontrolled hypertension, gout, possible major depression with psychotic features and/or other psychosis, generalized anxiety disorder, peripheral edema, status post splenectomy,

chronic left knee pain, history of tobacco and methamphetamine abuse, and history of bilateral inguinal hernias status post repair (Tr. 284). The claimant had full range of motion on examination (Tr. 285-288).

In April 2015, one year following his 2014 hospitalization, the claimant was again hospitalized with acute swelling of the right hand and right foot (Tr. 292). He was assessed with cellulitis, gout, and hypertension (Tr. 292-295).

On January 25, 2017, Dr. Vivek Khetpal, M.D. saw the claimant in his office and noted a LVEF 15% with severe LV dysfunction, and diagnosed him with left ventricular failure. Dr. Khetpal noted a worsening of the claimant's symptoms, including weight gain, and assessed him as being in moderate heart failure, referred to as New York Heart Association Class III, noting that the claimant could walk at a sedentary level before needing to rest (Tr. 420-421). He also submitted a Medical Assessment of Ability to Do Work-Related Activity (Physical) form, which he did not complete, but instead wrote "Unable to work," referencing the claimant's congestive heart failure and LVEF of 15% (Tr. 418). He indicated that the claimant would need further testing, but that he was at a lifting restriction of no more than ten pounds until then (Tr. 423).

The claimant completed a Function Report, in which he stated that he could not lift anything, or even "sneeze wrong," that he cannot walk very far due to knee and ankle injuries, and that he has bipolar disorder (Tr. 171). He indicated, *inter alia*, that he did not drive very often because of his bad right knee, and that it is hard for him to stand and walk because of his knee and stomach problems (Tr. 174-176). His father also completed a Third Party Function Report, in which he indicated that the claimant has gout in his knee

and foot, and that some aspects of personal care are difficult because it is difficult for him to hold his arms up (Tr. 187-188). His father also indicated that the claimant's doctor told him not to lift, squat, bend, or stand for very long, and that the claimant's ability to walk, stand, and climb stairs is limited (Tr. 192).

State reviewing physicians determined that the claimant was capable of performing the full range of light work (Tr. 60-61, 71-72).

At the administrative hearing, the ALJ asked the claimant about the multiple year-long gaps in treatment and whether he was medication-compliant during those gaps, and the claimant noted that he continued taking his prescription medications during those times (Tr. 40-41). The claimant further testified that follow-up medical appointments were more difficult due to a lack of insurance and money (Tr. 42). He stated that after his 2014 hospitalization, he had been given lifting restrictions and put on a strict diet, as well as being told that he could not have a lot of excitement, which he interpreted to mean that he could not work (Tr. 43). He believed he had a lifting restriction of no more than ten pounds (Tr. 43).

In his written opinion, the ALJ discussed the claimant's hearing testimony, as well as all the evidence in the record. As relevant, the ALJ noted a number of gaps in treatment, between April 2014 and April 2015 for unrelated symptoms, from April 2015 to April 2016, and again from April 2016 to April 2017, and noted that such long gaps are inconsistent with the alleged severity of his impairments. He further noted that Dr. Khetpal had indicated that medications had been "relatively effective" in controlling the claimant's symptoms (Tr. 20). The ALJ further noted that the claimant's reports of preparing his own

meals, performing household chores, getting around outside unaccompanied, shopping in stores, and spending time with family and friends was a somewhat normal level of activity, and that the physical and mental capabilities for these activities were similar to those for obtaining and maintaining employment (Tr. 20). The ALJ found that Dr. Khetpal's January 2017 assessment was not well supported and did not explain why the claimant could not do sedentary work. He further noted that this January 2017 evaluation did not provide an assessment for a longitudinal period, thus assigning little weight to this opinion that the claimant was unable to work (Tr. 21). He gave great weight to the opinions of the state reviewing physicians in light of the claimant's limited treatment and gaps between admissions and outpatient treatment, but further limited the claimant to sedentary work based on Dr. Khetpal's treatment record and the claimant's subjective complaints (Tr. 21).

The claimant asserts that the ALJ erred in assessing his RFC. As part of that argument, he contends that the ALJ failed to account for the full extent of his cardiovascular problems and failed to account for the claimant's painful mobility in his knees following an ACL repair, resulting in a failure to properly consider the combined effect of all of his impairments. He asserts that the ALJ should have considered a sit/stand option with regard to his impairments. He further asserts that the ALJ's discussion regarding the claimant and his father's function reports were "overly selective." The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in

determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). But here, the ALJ's treatment of the medical evidence in this case meets these standards. The claimant asserts that the ALJ did not explicitly discuss each cardiovascular finding, and further failed to delve into the claimant's remote ACL repair, and that the ALJ should have included a sit/stand option in the RFC. However, the ALJ is not required to recite every finding contained in the medical record, particularly where there is no evidence that the record supports further limitations than those proposed by the ALJ. *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence.") (internal quotations omitted). And here, the evidence *did* reflect painful range of motion as to the claimant's right knee, but that *same evaluation* noted a full range of motion, and there is no further evidence, not even testimony from the claimant, indicating a need for a sit/stand option. *See also Hardman v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[C]laimant does not allege—and the medical evidence does not suggest—functional limitations flowing from the heart attack other than those already acknowledged by the ALJ[, and] [n]othing in claimant's arguments on appeal or the medical record as a whole suggests that claimant's knee injury or obesity required further investigation before an ALJ could determine what

functional limitations, if any existed as a result of these conditions."). The undersigned Magistrate Judge thus finds that the ALJ specifically noted the various relevant findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record—including Dr. Khetpal's limitation of the claimant to sedentary walking—*and still concluded* that he could perform sedentary work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The claimant's assertion, without more, that he is more limited than the ALJ found, is insufficient to warrant remand. The undersigned Magistrate Judge thus finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The undersigned Magistrate Judge likewise finds no error in the ALJ's assessment of the subjective statements made by the claimant and his father. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we

> evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

Pursuant to SSR 16-3p, a claimant's symptoms may be inconsistent with the overall evidence of record "if the frequency or extent of treatment sought by [a claimant] is not comparable with the degree of the [claimant's] subjective complaints, or if the [claimant] fails to follow prescribed treatment that might improve symptoms." *Id.* at *9. The rule also requires the ALJ to consider reasons for infrequency of treatment, including affordability. *Id.* at *9-10 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints[, including that] [a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services."). However, there is no indication here that the claimant sought and was refused treatment due to his inability to pay or that he has been denied medical care because of his condition(s). *See, e. g.*, *Mann v. Astrue*, 284 Fed. Appx. 567, 571 (10th Cir. 2008) ("While Mann claims that her poverty prevents her from seeking further medical care or prescription pain medication, she has provided no evidence that she 'sought to obtain any low-cost medical treatment from her doctor or from clinics and

-11-

hospitals' or that she has 'been denied medical care because of her financial condition.'"), *quoting Murphy v. Sullivan*, 953 F.2d. 383, 386-387 (8th Cir. 1992). *Cf. Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) ("[I]nability to pay may provide a justification for a claimant's failure to seek treatment," where the record indicates the claimant sought treatment and was refused due to inability to pay.). Accordingly, the undersigned Magistrate Judge finds that the ALJ's evaluation of the subjective statements is supported by substantial evidence, and that the ALJ's decision should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**